## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BEVERLY TUSTIN,                          :
individually and as executrix of the     :
Estate of George Tustin,                  :
    Plaintiff,                           :
                                         :
v.                                        :          CIVIL ACTION NO.
                                         :          3:08-cv-01034 (VLB)
HAMSA JAYARAJ, et al.,                    :
    Defendants.                          :          June 2, 2009


## MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS
## [Docs. ## 37, 40, 41]

Before the Court are the motions to dismiss filed by the defendants, eight

health-care professionals (hereinafter the "state defendants") alleged to be

employed by the State of Connecticut and associated with the Veteran's Home

and Hospital in Rocky Hill, Connecticut (hereinafter the "Veteran's Hospital"). The

plaintiff, Beverly Tustin (hereinafter "Tustin"), brought this suit in her capacity as

executrix of her husband's estate pursuant to 42 U.S.C. §1983 against the

defendants in their individual capacities, alleging violations of her decedent's

constitutional rights as guaranteed by the Fourteenth Amendment to the United

States Constitution.[1] She also sues on her own behalf for loss of consortium.

Tustin asserts jurisdiction pursuant to 28 U.S.C. § 1331 over her §1983

claim and supplemental jurisdiction over her common law claim pursuant to 28

U.S.C. § 1367 . The state defendants have filed the within motions to dismiss

_____

[1]Tustin's complaint also alleges violations of George Tustin's rights under the Eighth
Amendment and two state statutes, but she has withdrawn those claims. [Doc. # 50]

**1**

arguing that the complaint [Doc. #1] fails to state a claim upon which relief may be granted. For the reasons hereinafter set forth, the motions to dismiss are GRANTED.

### Facts

The complaint alleges the following facts. On July 11, 2005, George Tustin became a patient at the Veteran's Hospital, which is operated by the State of Connecticut. George Tustin was a known fall risk. Although the state defendants knew that George Tustin was a fall risk, they did not protect him from falling. On some date between July 11 and July 14, 2005, George Tustin fell, sustaining injuries resulting in his eventual death. On July 3, 2008, Tustin was appointed executrix of George Tustin's estate. On July 11, 2008, she brought the instant suit in federal court.

### Standard

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   The court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party. . . .   In general, [the court's] review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court must determine whether the complaint states enough facts, as

2

opposed to legal conclusions, to "nudge[] [the] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U. S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009).

The state defendants are represented by three different counsel, and have filed three separate motions to dismiss. All of the state defendants have asserted the same grounds for dismissal, presumably because the claims are identical as to all defendants. Accordingly, the Court will address the motions and arguments collectively.

Argument

The state defendants argue that Tustin's complaint is essentially one of medical malpractice, and does not assert acts or omissions constituting a constitutional violation necessary to sustain a § 1983 claim. Tustin responds that her claim is that the state defendants showed deliberate indifference to her decedent's medical needs, implicating his constitutional right to due process.

The state defendants argue, and Tustin admits, that "mere medical malpractice" is insufficient to implicate constitutional rights. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). In Gamble, the Supreme Court held that deliberate indifference to the serious medical needs of prisoners constituted the "unnecessary and wanton infliction of pain proscribed

by the Eighth Amendment." <u>Id.</u> at 104. It went on to hold that where a complaint merely alleged negligence on the part of prison doctors or staff, it did not "state a valid claim of medical mistreatment under the Eighth Amendment."<u>Id.</u> at 106.

Tustin relies on <u>Chance v. Armstrong</u>, 143 F.3d 698 (2d Cir. 1998) and <u>Pimintel v. Deboo</u>, 411 F. Supp. 2d 118 (D. Conn. 2006) and argues that the standard of deliberate indifference is applicable to her claims. Her reliance is misplaced because <u>Chance</u> and <u>Pimintel</u> dealt with the standard of care required for treating prisoners under the Eighth Amendment alone, and Tustin has withdrawn her Eighth Amendment claim. "There are both subjective and objective components to the deliberate indifference standard *for convicted prisoners*." <u>Pimintel</u>, 411 F. Supp.2d at 128 (emphasis added). Even if Tustin reasserted her Eighth Amendment claim, she has alleged no facts to suggest that her decedent was in the involuntary and formal custody of the state at the Veteran's Hospital. <u>See City of Revere v. Massachusetts General Hospital</u>, 463 U.S. 239, 244 (1983) (Eighth Amendment deliberate indifference claim unavailable to pretrial detainee, as Eighth Amendment only applies after formal adjudication of guilt). Therefore, the deliberate indifference standard of <u>Gamble</u> and its progeny is inapplicable in this case.

Tustin's remaining constitutional claim is for a violation of George Tustin's right to substantive due process. The Supreme Court has indicated that for claims brought pursuant to §1983 to vindicate the Fourteenth Amendment right to substantive due process, state actors may be liable for conduct that is more

culpable than negligence, but less than intentional conduct, depending on the circumstances. See County of Sacramento v. Lewis, 523 U.S. 833, 834 (1998). In County of Sacramento, the Court said, "Liability for negligently inflicted harm is categorically beneath the constitutional due process threshold, while conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level. Whether that level is reached when culpability falls between negligence and intentional conduct is a matter for closer calls. Id. Therefore, a closer examination of the state defendants' conduct is required before the Court can determine whether or not it "shocks the conscience." Id. "The need to preserve the constitutional proportions of substantive due process demands an exact analysis of context and circumstances before deliberate indifference is condemned as conscience shocking." Id. Tustin must allege something more than mere negligence to sustain her claims. "The due process clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986). "Government action resulting in bodily harm is not a substantive due process violation unless the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lombardi v. Whitman, 485 F.3d 73, 79 (2d Cir. 2007).

"Mindful of the Supreme Court's admonition not to permit the Due Process Clause to 'transform every tort committed by a state actor into a constitutional

violation,' DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 202 (1989), [the Second Circuit has] recognized two 'separate and distinct theories of liability' under the substantive component of the Due Process Clause: 'special relationship' liability and 'state-created-danger' liability." Benzman v. Whitman, 523 F.3d 119 (2d Cir. 2008).  To rely the "special relationship" theory, Tustin must plead some kind of involuntary custody. In DeShaney, "the Court gave, as examples, the obligations of states to incarcerated prisoners and involuntarily committed mental patients, and concluded that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Matican v. City of New York, 524 F.3d 151, 155-56 (2d Cir. 2008) (analyzing reach of DeShaney). The inability of those affected to protect themselves is insufficient implicate the special relationship theory. "[T]he duty arises solely from the State's affirmative act of restraining the individual's freedom to act on his own behalf through incarceration, institutionalization, or other similar restraint of personal liberty." Id. at 156 (internal quotations omitted). See also Suffolk Parents of Handicapped Adults v. Wingate, 101 F.3d 818, 824 (2d Cir.1996) (special relationship theory unavailable to mentally disabled adults in voluntary residential services, as legal guardians could have requested discharge). There are no facts pleaded that would render it plausible that George Tustin was involuntarily committed to the Veteran's Hospital. Therefore, the first theory of substantive due process relief is unavailable.

6

As to the "state-created danger" theory, as in <u>DeShaney</u>, "[w]hile the State may have been aware of the dangers that [plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." <u>DeShaney</u>, 489 U.S. at 201. There are no facts pleaded in the complaint that would render it plausible that the defendants did anything to render George Tustin more vulnerable to falling. Instead, the complaint pleads that George Tustin had a pre-existing risk, which the defendants neither exacerbated nor ameliorated. This failure to act in the face of a known danger does not rise to the level of a constitutional violation. "A failure to interfere when misconduct takes place, and no more, is not sufficient to amount to a state created danger." <u>Pena v. DePrisco</u>, 432 F.3d 98, 110 (2d Cir. 2005) (allegation that fellow police officers failed to stop drunk officer from driving home and killing several pedestrians was insufficient to state constitutional violation). "It is not enough to allege that a government actor failed to protect an individual from a known danger of bodily harm or failed to warn the individual of that danger." <u>Lombardi</u>, 485 F.3d at 157-58. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." <u>DeShaney</u>, 489 U.S. at 1005-06. "[T]he requirement of conscience-shocking behavior [to sustain due process claim] is a requirement that must be met *in addition to* the requirement of affirmative government action." <u>Kaya v. City of New London</u>, 3:05-CV-1436, 2008 WL 220745 at *9 (D. Conn. Jan.

25, 2008) (emphasis in original) (911 dispatcher who failed to intervene in domestic dispute did not affirmatively contribute to later incident of violence). This is not to say that the state defendants had no duty to protect George Tustin from falling under the law of Connecticut. "A State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes. But not 'all common-law duties owed by government actors were ... constitutionalized by the Fourteenth Amendment.'" Id. at 1007, quoting Daniels v. Williams, 474 U.S. 327, 335 (1986) (explaining that the Constitution and state tort law do not address the same concerns).

While Tustin argues that "the defendants cannot establish that it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," [Doc. #50] this argument relies on the former standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Since 2007, when the Supreme Court announced the new standard in Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007) that "factual allegations must be enough to raise a right to relief above the speculative level," it has been the rule that the plaintiff must plead facts, as opposed to legal conclusions, that would show the plausible entitlement, as opposed to a mere conceivable entitlement, to relief on the face of the complaint. In the absence of any particularized facts that would render it plausible that George Tustin was involuntarily confined to the custody of the state or that the defendants either created his danger of falling or made him more vulnerable to falling, Tustin's §1983 claim must be dismissed for failure to comply

8

with Fed. R. Civ. P. 8(a)(2).

The defendants' motions to dismiss [Doc. # 37. 40, 41] are GRANTED as to Tustin's federal claim. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Tustin's loss of consortium claim and DISMISSES it without prejudice to refiling in Connecticut Superior Court. The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  June 2, 2009.